# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| LULAY LAW OFFICES, | |
| Plaintiff-Appellant, | Case No. 17-cv-477 |
| v. | Judge John Robert Blakey |
| MELISSA MARYANN RAFTER, | |
| Defendant-Appellee. | |

## MEMORANDUM OPINION AND ORDER

This bankruptcy appeal arises from a series of conflicting orders on the distribution of proceeds of a debtor's personal injury claim. Plaintiff-Appellant Lulay Law Offices (LLO), the firm that secured and currently possesses the proceeds, contends that the trustee of the bankruptcy estate abandoned the proceeds in the early stages of the bankruptcy process, rendering void any subsequent orders relating to that asset. [20] at 4.[1] Defendant-Appellee Melissa Maryann Rafter argues that the bankruptcy court exempted those proceeds, which entitles her to their possession, as reflected in the bankruptcy court's Turnover Order of January 6, 2017. [22] at 7, 9; Bankr. Dkt. 59. Rafter seeks enforcement of the Turnover Order, while LLO asks this Court to vacate any orders subsequent to the alleged abandonment. [20] at 8; [22] at 11.

---

[1] References to this Court's docket and the bankruptcy court's docket will be noted as "[docket number]" and "Bankr. Dkt." respectively. References to the exhibits attached to Plaintiff-Appellant's brief will be noted by the appendix page numbers appearing at the end of the briefing material, as "[20] App. [page number]." This Court takes judicial notice of matters of public record, such as filings in the bankruptcy court, even where not specifically referenced by the parties. *See e.g.*, *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).

As explained further below, this Court respectfully vacates those orders and remands this case to the bankruptcy court for further proceedings consistent with this opinion.

## I. Background

Defendant-Appellee Rafter was involved in a car accident in September 2014 that resulted in a personal injury lawsuit, in which she was represented by Plaintiff-Appellant LLO under a contract signed that month. [20] at 2. LLO served notice of its attorney's lien for fees and costs on any proceeds from the suit in November 2014. Dkt. 20 App. 15. That statutory lien is authorized by the Illinois Attorneys Lien Act. 770 ILCS 5/1 *et seq*.

On July 28, 2016, Rafter filed for Chapter 7 bankruptcy. Bankr. Dkt. 1. The present record does not establish precisely when LLO negotiated a settlement on Rafter's personal injury claim, *compare* [22] at 3 *with* [20] at 2, but Rafter signed a settlement agreement on August 25, 2016, [20] App. 14, after she had filed for bankruptcy. The settlement was for $20,000, to be held in trust by LLO "until LLO is directed in writing by bankruptcy court how to distribute." *Id*. That $20,000 in proceeds from Rafter's personal injury claim ("the asset") is the subject of the present dispute. LLO remains in possession of the asset.

### A. The Bankruptcy Process Begins

Once Rafter filed for bankruptcy in July 2016, a trustee for the bankruptcy estate was appointed and a meeting of creditors scheduled, pursuant to 11 U.S.C. § 701 and § 341. The meeting was scheduled for August 22, 2016. Bankr. Dkt. 8. Notice of the meeting was provided to Rafter's creditors, including LLO. Bankr.

Dkt. 9 at 3. A meeting was held on August 22, and a Statement Adjourning Meeting of Creditors was entered on August 23, 2016, although that filing also noted "Meeting Continued on 9/12/2016." Bankr. Dkt. 14. No other record of a potential meeting on September 12 exists.

On August 24, the bankruptcy trustee filed a Report of No Distribution. Bankr. Dkt. 15. In the Report, the trustee certified that "there is no property available for distribution from the estate over and above that exempted by law"; that the bankruptcy estate had been "fully administered"; and requested that he be discharged from any further duties as trustee. *Id*. The Report listed the amount of exempt assets as $40,551.59. *Id*.

On August 28, Rafter filed her required schedules, listing her property, claims against her, and claims for exemption. Bankr. Dkt. 16. Schedule C lists the items that Rafter claimed as exempt from the demands of her creditors, including the asset at issue in this case, along with other personal property. *Id*. at 9. Of the asset's $20,000 in gross proceeds, Rafter claimed $17,665 as exempt under the Illinois exemption scheme.[2] *Id*. The total dollar amount claimed as exempt in Rafter's Schedule C was $60,551.59. *Id*. at 7–9. That number matches the trustee's certification of exempt assets if the $20,000 worth of proceeds is subtracted, indicating that the trustee either was not aware that Rafter was claiming part of

---

[2] 11 U.S.C. § 522(b)(1) of the bankruptcy code permits states to enact their own exemption schemes, and "opt out" of the federal exemptions listed in § 522(d). Illinois has opted out, and bankruptcy exemptions claimed in Illinois must be one of the exemptions permitted by Illinois law. *See Clark v. Chicago Mun. Emp. Credit Union*, 119 F.3d 540, 543 (7th Cir. 1997).

3

the asset as exempt, or that the trustee believed he had already abandoned the asset. *Id.* at 9; Bankr. Dkt. 15.

On September 9, 2016, Rafter filed a motion to avoid liens on the asset under 11 U.S.C. § 552(f), and to determine disbursement of the asset. Bankr. Dkt. 18. On September 20, LLO filed a motion to approve disbursement of its fees and costs out of the asset, based upon its prior agreements with Rafter. Bankr. Dkt. 20. These filings set in motion the series of disputed orders now on review before this Court.

**B. The Bankruptcy Court's Orders**

On September 30, 2016, the bankruptcy court issued three orders relating to the asset, in response to both Rafter's motion to avoid liens and LLO's motion to approve distribution of the asset and to deny Rafter's motion to avoid liens. Bankr. Dkt. 18; Bankr. Dkt. 20.

Order 24 first purported to avoid three medical liens on the asset resulting from medical care received after the car accident, relieving Rafter from those obligations. Bankr. Dkt. 24. Second, the order allowed Rafter's claimed $17,665 exemption and instructed that "Debtor shall be paid the entire amount of her exemptions, the sum of $17,665." *Id.*

Order 25 granted LLO's motion to approve the disbursement of its fee and costs from the asset, totaling $7,267.98. Bankr. Dkt. 25. The bankruptcy court also indicated that it would not rule on the distribution of the remainder of the asset "because the trustee abandoned this asset." *Id.*

Order 26 reiterated the approval of Rafter's claimed exemption of $17,665, and stated that "medical liens" were avoided "to the extent they impair the

4

exemption," while LLO's attorney's lien was addressed "by separate order." Bankr. Dkt. 26. Since Order 26 is dated September 30, the record remains unclear why this ostensibly redundant order issued.

It quickly became clear to the parties, however, that the disbursement granted to LLO under Order 25 and the distribution granted to Rafter by Order 24 were irreconcilable because $17,665 and $7,267.98 add up to more than $20,000. A flurry of motions followed, culminating in a hearing on December 16, 2016. Bankr. Dkt. 70. At that hearing, the bankruptcy court concluded that the bankruptcy trustee had abandoned the asset, which was therefore "no longer a part of the estate." *Id.* at 5. As such, the bankruptcy court also found that it lacked jurisdiction over the distribution of the asset, but concluded that it retained jurisdiction over any request for lien avoidance, including Rafter's earlier motion under § 522(f). *Id.* at 5, 6–7. Based upon this analysis, the bankruptcy court vacated Order 25—rescinding LLO's disbursement—but left in place Orders 24 and 26, affirming Rafter's exemption and the avoidance of the medical liens. Bankr. Dkt. 55.

After denying various challenges by LLO to this decision, the bankruptcy court issued an order on January 6, 2017, compelling LLO to turn over the exempted amount of $17,665 to Rafter, from the $20,000 still in its possession. Bankr. Dkt. 59. The bankruptcy court closed the case on January 16, 2017. Bankr. Dkt. 60. LLO appeals from the January 6 Turnover Order. Dkt. 1 at 1.

**C. Summary of Bankruptcy Events**

In short, the present record indicates that:

5

- On August 22, 2016, a properly noticed creditors' meeting was held, but no documentation of the specific events of that meeting appear in the record.

- On August 24, the trustee filed a No Distribution Report.

- On August 25, Rafter signed the settlement agreement with LLO.

- On August 29, Rafter's schedules were filed, claiming the asset as exempt property.

- On September 30, the bankruptcy court allowed Rafter's claimed $17,665 exemption on the asset and purported to avoid the medical liens attached to the asset.

- On January 6, 2017, the bankruptcy court ordered the turnover of $17,665 from LLO to Rafter.

- On January 16, the bankruptcy court closed the case. (It has since been reopened as a result of the parties subsequently filing additional motions.)

At the time of this appeal, Order 24, Order 26, and the January 6 Turnover Order all remain in effect.

## II. Legal Standard

This Court has jurisdiction to hear appeals from the rulings of the bankruptcy court under 28 U.S.C. § 158(a). A turnover order is a final, appealable order when it terminates the relevant adversary proceeding. *See Matter of Cash Currency Exchange, Inc.*, 762 F.2d 542, 546 (7th Cir. 1985). On appeal, this Court reviews the bankruptcy court's legal findings *de novo* and its factual findings for clear error. *In re Mississippi Valley Livestock, Inc.,* 745 F.3d 299, 302 (7th Cir. 2014). Finally, the district courts have the "authority to remand to the bankruptcy court to clarify and make additional factual findings where appropriate." *Dvorkin Holdings, LLC*, 547 B.R. 880, 899 (N.D. Ill. 2016) (citing *In re Sentinel Mgmt. Grp., Inc.*, 728 F.3d 660 (7th Cir. 2013)).

**III. Analysis**

Based upon the record, it appears that everyone involved in this case—the bankruptcy court, the trustee, and both parties on appeal—assumed that the bankruptcy trustee abandoned the asset at some early stage in the process. If true, under well-settled law, an effective abandonment would have terminated the bankruptcy court's subject matter jurisdiction over the asset, rendering void every subsequent order relating to it. The evidence in the record, however, fails to clearly establish whether the asset was properly abandoned, and if it was, on what date such abandonment occurred. Consequently, this case must be remanded to the bankruptcy court for further findings.

**A. Relevant Bankruptcy Principles**

When a debtor files for Chapter 7 bankruptcy, her personal property becomes part of the bankruptcy estate to be administered by the trustee, whose responsibility it is to assess the estate's assets for distribution to its creditors. *In re Teknek, LLC*, 563 F.3d 639, 645 (7th Cir. 2009). The right to assert legal claims is itself an asset included in the personal property that enters the bankruptcy estate. *In re Polis*, 217 F.3d 899, 901 (7th Cir. 2000); 11 U.S.C. § 541(a)(1). As long as a legal claim remains within the bankruptcy estate, only the trustee, "as the real party in interest," has standing to pursue the claim. *Matthews v. Potter*, 316 Fed. Appx. 518, 521 (7th Cir. 2009); *see also Cable v. Ivy Tech State College*, 200 F.3d 467, 472 (7th Cir. 1999) ("The trustee has sole authority to dispose of property, including managing litigation . . . *only* the trustee has standing to prosecute or defend a claim belonging to the estate."). Thus, any action that a debtor purports to

take on a claim that is still part of the bankruptcy estate may be invalidated. When a claim passes out of the bankruptcy estate, the debtor regains her rights to it, but the manner in which the claim leaves the estate affects the nature of the debtor's rights to control it.

Abandonment is one means for a claim to leave the bankruptcy estate. *Morlan v. Univ. Guar. Life Ins. Co.*, 298 F.3d 609, 617 (7th Cir. 2002); *Matter of Xonics, Inc.*, 813 F.3d 127, 131–32 (7th Cir. 1987). If the bankruptcy trustee abandons a claim, title to the claim reverts to the debtor as if she owned it "continuously and the bankruptcy never happened." *Potter*, 316 Fed. Appx. at 521–22. This means that a debtor whose claim is abandoned at any stage in the bankruptcy process is considered to have retained title to it without interruption, regardless of the fact that it was within the trustee's control for some period of time. *See Morlan*, 298 F.3d at 617. In Rafter's case, this rule would have allowed her to validly settle her claim on August 25, 2016, as long as the trustee actually abandoned the asset at some point in the process.

Abandonment of an asset also has jurisdictional implications. Upon abandonment, the bankruptcy court's subject matter jurisdiction "lapses" at the point the "property leaves the estate." *See Matter of Fedpak Systems, Inc.*, 80 F.3d 207, 214–15 (7th Cir. 1996) (quoting *Xonics*, 813 F.3d at 131); *see also Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) (creditors can have no interest in an abandoned asset, placing it outside bankruptcy jurisdiction). Thus, any order

8

entered by the bankruptcy court after an effective abandonment would be void for lack of subject matter jurisdiction.

Exemption, on the other hand, operates under a different set of principles in which the debtor regains certain rights to exempt property, but the property remains within the estate until the case is closed. *In re Witt*, 473 B.R. 284, 289 (Bankr. N.D. Ind. 2012); 11 U.S.C. §§ 541(a), 542(a). In contrast to abandonment, exemption protects all or a portion of the exempted asset from the claims of creditors but the exempt asset itself remains administrable by the trustee and the bankruptcy court. *Witt*, 473 B.R. at 289 (citing *Schwab v. Reilly*, 560 U.S. 770 (2010) (trustee may sell exempt asset to recover its value in excess of the claimed exemption)). In this way, the debtor regains her own interest in the asset upon its exemption, which takes effect, "at the earliest, when the time for filing objections to an exemption expires without objection." *See Ball v. Nationscredit Financial Servs. Corp.*, 207 B.R. 869, 872 (N.D. Ill. 1997) (citing *Matter of Salzer*, 52 F.3d 708, 711–13 (7th Cir. 1995)).

In Rafter's case, therefore, if she has a valid exemption, it could not have taken effect until the end of September 2016, that is, thirty days after either the creditors' meeting of August 22, or her filing of any amended schedules, whichever is later. Bankr. R. Civ. P. 4003(b)(1); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643 (1992); *see also* Bankr. Dkt. 8 at 2 ("Deadlines"). Exemption alone, therefore, would call into question the validity of Rafter's August 25 settlement agreement, as Rafter would not have regained her interest in the asset until September.

9

In light of this analysis, the timing of the trustee's purported abandonment of the asset affects not only the jurisdiction of the bankruptcy court, but also the validity of the settlement that governed the relevant proceeds in the first place.[3]

**B. Abandonment Not Clearly Established by the Record**

As noted above, every party involved in this case assumes that the trustee abandoned the asset at some point before September 30, 2016. Order 25, issued on September 30, stated that the trustee had abandoned the asset. Bankr. Dkt. 25. Counsel for the trustee stated at the September 30 hearing before the bankruptcy court that the trustee had abandoned the asset. Bankr. Dkt. 69 at 4. Rafter stated in her motion to avoid liens that the asset was "reported to, and abandoned by the U.S. Trustee at the Section 341 meeting" on August 22. Bankr. Dkt. 2 ¶ 3. LLO asserts, with some support from case law, that the asset was abandoned as of the trustee's filing of the No Distribution Report on August 24.[4]

If abandonment occurred on any of these dates, the bankruptcy court's subject matter jurisdiction over the asset would have ended and all subsequent orders would be void. *See Fedpak Systems*, 80 F.3d at 214–15. Additionally, abandonment at any date would restore Rafter's interest in the asset *nunc pro tunc*, so that there would be no question as to her ability to settle her claim on August 25,

---

[3] Because exemption has no similarly retroactive effect as abandonment, the late September exemption alone cannot validate Rafter's August 25 settlement, nor could it void any of the bankruptcy court's later orders regarding the asset.

[4] LLO actually asserts that the asset was abandoned as of the filing of the report on September 8, 2016, but the record contains no filing by the trustee on that date, and thus this Court infers that LLO is actually referring to the No Distribution Report filed on August 24, 2016. Bankr. Dkt. 15.

10

2016. *See Morlan*, 298 F.3d at 617; *Potter*, 316 Fed. Appx. at 521–22. Any remaining dispute over the asset's distribution would then belong in state court.

There is, however, insufficient evidence in the current record for this Court to conclude when, or if, an effective abandonment occurred. Because abandonment affects subject matter jurisdiction, this issue is not waived and it may be raised at any time by any party or by the Court *sua sponte*. *See Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 179 (7th Cir. 1994). And because the procedural requirements for abandoning an asset are "exacting," this Court must consider carefully whether those requirements were met. *Morlan*, 298 F.3d at 618 (rejecting debtor's proffered evidence of abandonment for failing to satisfy the statutory requirements).

Two methods of effecting abandonment potentially apply to this case. First, under 11 U.S.C. § 554(a), a trustee can abandon an asset after notice to the debtor's creditors and the opportunity for a hearing. *Morlan*, 298 F.3d at 618. A formal hearing need not be provided if none is requested by an interested party, and "effective" notice to all creditors is sufficient. *Id.*; *see also Martin v. United States*, No. 3:13-cv-03130, WL 59070 at *3 (C.D. Ill. Jan. 5, 2017) (abandonment effective under § 554(a) where trustee filed a Notice of Intent to Abandon that was sent to all creditors, followed by a No Distribution Report).

Here, the record lacks sufficient evidence of that required notice. The notice of the § 341 creditors' meeting did not contain any specific reference to abandonment. *See* Bankr. Dkt. 9. Moreover, even though Rafter asserts in her Motion to Avoid Liens that the trustee notified Rafter's creditors of his intent to

11

abandon the asset in person at the § 341 meeting, the record before this Court only contains Rafter's unsworn assertion in her motion, Bankr. Dkt. 18 ¶ 3, and similar statements relying on silence rather than evidence, [20] at 71 (". . . there is nothing to suggest that Mr. Lulay did not receive notice of the abandonment."). Absent some actual evidence in the record that § 554(a) was satisfied, this Court cannot make such a finding, even if abandonment was, in fact, the trustee's intention. *See Morlan*, 298 F.3d at 618 (intent cannot substitute for statutory requirements of abandonment).

The other potential method of abandonment arises from 11 U.S.C. § 554(c), under which scheduled property that is "not otherwise administered at the time of the closing of a case" is considered abandoned to the debtor. The district courts are split on whether abandonment under § 554(c) takes effect once a case is closed or merely when a No Asset or No Distribution report is filed. *Compare In re Green*, 241 B.R. 550, 558 & n.2 (Bankr. N.D. Ill. 1999), *aff'd* 269 B.R. 781 (N.D. Ill. 2001), *judgment aff'd* 42 Fed. Appx. 815 (7th Cir. 2002) *with In re Ardisson*, 272 B.R.346, 351 n. 1 (Bankr. N.D. Ill. 2001).

Based upon the gaps in the present record, this Court need not decide here which line of cases remains more consistent with the plain language of § 554(c). Suffice to say, if § 554(c) abandonment took effect upon the filing of the No Distribution Report in August 2016, then abandonment would pre-date any subsequent orders on the asset, rendering them void. In the alternative, the asset here may have been abandoned pursuant to § 554(c) upon the closing of the

12

bankruptcy case on January 16, 2017. Bankr. Dkt. 60; *see also Williams v. United Tech. Carrier Corp.*, 310 F. Supp. 1002, 1010–11 (S.D. Ind. 2004); *In re Williams*, 228 B.R. 910, 912 n.3 (Bankr. N.D. Ill. 1999); *Helms v. Arboleda*, 224 B.R. 640, 645 (Bankr. N.D. Ill. 1998); *Behrens v. Woodhaven Ass'n*, 87 B.R. 971, 973 (Bankr. N.D. Ill. 1988).

If the asset was, in fact, abandoned under § 554(c) as of January 16, 2017, then under the rule articulated in *Morlan* and *Potter*, control of the lawsuit asset would revert to Rafter *nunc pro tunc*, so that there would be no question as to her ability to settle her claim on August 25, 2016. *See Morlan*, 298 F.3d at 617; *Potter*, 316 Fed. Appx. at 521–22. As such, the bankruptcy court would not have lost jurisdiction over the asset prior to the closing of the case, and thus, its orders in the interim would not be automatically void.

Abandonment under § 554(c), however, also requires that the asset not have been "otherwise administered." Here, the present record remains unclear whether any "administration" of the asset occurred before the case closed on January 16, 2017. Certainly a number of orders issued with respect to the asset (*See* Bankr. Dkt. 24, 25, 26, 59), and counsel for the trustee participated in at least one proceeding relating to the asset's distribution, appearing before the bankruptcy court at the hearing on September 30, 2016. Bankr. Dkt. 69 at 4. If the asset was "otherwise administered," abandonment could not occur under § 554(c) and the asset would remain within the estate and under the jurisdiction of the bankruptcy court.

13

In short, based upon the current record, this Court cannot determine if the trustee actually abandoned the asset under either § 554(a) or § 554(c), and if so, when such abandonment occurred. Because this issue determines the proper scope of the bankruptcy court's jurisdiction to enter the orders challenged on appeal, and because it may require supplementing the record or making revised findings by the bankruptcy court, remand is appropriate. *See In re Mississippi Valley*, 745 F.3d at 309.

### C. Exemption Does Not Supersede Abandonment

Rafter suggests that the exemption granted to her through Order 24 supersedes any abandonment, even if effective. [22] at 5–6, 7. In other words, Rafter asserts that the bankruptcy court retains jurisdiction to enforce an exemption even where the exempted asset has already been abandoned. The law does not support such a conclusion. Because a proper abandonment divests the bankruptcy court of jurisdiction over the asset, no additional orders can be entered regarding that abandoned asset. Therefore, as noted above, the relevant questions on remand remain: whether the asset was actually abandoned, and if so, when.

### D. Conflicting Orders and Liens Not Avoidable

To assist the bankruptcy court on remand, and to remedy certain errors and conflicts arising below, this Court must give the bankruptcy court an appropriately clean slate on remand. Consequently, this Court hereby vacates Order 24, Order 26, and the January 6 Turnover Order. For example, Order 24 purported to avoid the three "medical" liens attached to the asset. Bankr. Dkt. 24. It did so relying on 11 U.S.C. § 522(f). Bankr. Dkt. 18; Bankr. Dkt. 69 at 3. That order has already

14

been vacated for lack of proper notice with respect to the lien retained by the United States through the Department of Health and Human Services (referred to in Order 24 as the "Medicare lien"). Bankr. Dkt. 112. This Court now vacates the avoidance granted with respect to the other two "medical" liens, retained by the Delnor Hospital and the Illinois Department of Healthcare, because § 522(f) applies only to judicial liens and certain types of security interests; but it does not support the avoidance of statutory liens. 11 U.S.C. § 522(f). Each of the three medical liens—as well as LLO's attorney's lien—are statutory and thus cannot be avoided under § 522(f). *See* Dkt. 20 App. 16–22.

## IV. Conclusion

The Court vacates Order 24, Bankr. Dkt. 24, Order 26, Bankr. Dkt. 26, and the Turnover Order, Bankr. Dkt. 59, and remands this case to the bankruptcy court to determine exactly when (or indeed if) an effective abandonment occurred, and to make such other necessary findings it deems consistent with this opinion.

Dated: September 29, 2017

Entered:

*[signature]*

John Robert Blakey
United States District Judge